Eastern District.
*May,* 1880.

*MAXENT vs. MAXENT & AL,*

MAXENT
*vs.*
MAXENT & AL. The proceedings of a family meeting are valid, although written and recorded in the French language.

APPEAL from the court of probates of the parish and city of New-Orleans.

PORTER, J. delivered the opinion of the court. This is an appeal from a decision of the court of probates, rendered so far back as the year 1819, which adjudicated to the mother of the appellants, an estate that was common property between her and them. The minority of several of the appellants, has enabled them to bring it up at this late day, and they allege as error apparent on the face of the record, that the process verbal of the family meeting, on which the adjudication was made, is written in the French language.

It was desirable on every consideration, that a question on which the title to such a large portion of property in this state depends, had received a full examination from the bar; but it has pleased those who had the management of the case, to submit it for our decision without argument; we are

therefore compelled to decide it by such lights as our own understandings, and research may furnish.

According to a provision of the constitution of this state, all judicial proceedings are to be conducted and preserved in the language in which the constitution of the United States is written. It is now too late to enquire into the policy or wisdom of introducing such a provision into the constitution. It is there, and must be obeyed. It was one of the conditions too, on which Louisiana was admitted into the Union, and superadded to the solemn obligation imposed on all public functionaries to obey, and give effect to the fundamental law of the state: we have in regard to this particular provision, the obligation of being bound in good faith to others, to do that which the people of this state through their Convention covenanted with the United States they would do.

Impressed, I hope, with a proper sense of the magnitude and weight of these obligations, I have given to the case now before the court a more than ordinary degree of attention.

It is eighteen years since the territory of Orleans was erected into a state, and this is

Eastern District.
*May*, 1830.

MAXENT
*vs.*
MAXENT & AL.
the first time the question which the present appeal presents, has come before the court in such a shape as to require it to be decided. But other causes have been adjudicated on, bearing a greater or less analogy to that before us, which it may be well to pass in review before entering on the considerations which are particular to the case now presented for decision.

Immediately after the adoption of the constitution, a question arose under the clause in the constitution already alluded to, and it was presented to the superior court of the late territory, which at that time had not been superseded by the state tribunals. It was there decided that a *mittimus* in the French language was void. According to the report of the case, it appears to have been acted on without much argument, and indeed it does not appear susceptible of any: as an order emanating from a court of justice, committing a criminal to jail, is clearly and emphatically a judicial proceeding. 2 *Martin*, 277.

The next case in which the question was presented, was that of *Dussau's syndics* vs. *Bredeaux*. The court there held that a creditor who had not opposed the homologation

of the proceedings of the creditors before the notary, nor appealed from the decree, could not avail himself of the process verbal being written in French. The judge, (Derbigny,) who delivered the opinion said: "We incline indeed to think, that the acts of creditors convened by a court of justice, are part of the judicial proceedings, which should be recorded and conducted in English."

In the case of *Tregre* vs. *Tregre*, the court waived the question as to the necessity of the deliberations of a family meeting being in English, but decided that the acts of the judge decreeing an adjudication was a judicial proceeding, and must be in the language in which the constitution of the United States was written. 6 *Martin*, 668.

The subject came again before the court in the case of *Viales' syndics* vs. *Gardner*, and it was then decided, that when the proceedings of creditors before a notary were returned into court, and made its judgment that they must be in the English language, no judgment appeared on record but the proceedings drawn up in French, and a judgment being a judicial proceeding could not be in that language. 9 *Martin*, 324.

VOL. I.                56

Eastern District,
*May*, 1830.

MAXENT
*vs.*
MAXENT & AL.

In the case of *Dittman* vs. *Hotz*, on an appeal from a judgment refusing to homologate an award, a similar decision was made, and similar reasons given for it. The court said that under the law as it then stood, no power was conferred on the judicial authority to render judgment on the award: all that could be done was to place it on record and order its execution, and that it could not be placed there as a judgment unless it was in the English language. A distinction, however, was taken and recognized between that which was evidence on which the court decided, and that which was a judgment. It was said in the opinion delivered in that case: "if the award is merely the evidence on which judgment is to be rendered, it may be written in any language the parties choose to adopt." 9 *Martin*, 200.

In the case of *Durnford* vs. *Segher's syndics*, it was held that the proceedings of creditors in a *concurso* carried on in the French language were voidable. That case presented the same question as that of *Dittman* vs. *Hotz*. The deliberations appointing syndics, do not require to be homologated. Their decision stands therefore when returned into

court as its judgment; and hence it follows, these deliberations must be in English. No judgment can be pronounced on the tableau, but that of homologation if it be approved. and as was said in *Viales' syndics* vs. *Gardner*, the homologation has no other effect than to place what is homologated on record as the decree of the court. *7 Martin,* 409.

In the case of *Tilghman* vs. *Dias*, an objection was made to an order of seizure and sale, issuing on an authentic act, executed in the French language. The court decided against the objection, and held; *first*, that it could not be considered as one *of the public records of the state*, which the constitution required to be in English, and *second*, that it was not a judicial proceeding; it was the evidence furnished to obtain judgment, 12 *Mart.* 691.

The petition praying for an adjudication of the property in the instance before us, is in English, and the judgment in that petition is in the same language. It is in these words : " *Let the deliberations of the minors Maxent's family hereunto annexed, be approved, and registered, and let the property within mentioned be adjudicated to the petitioner, at the*

MAXENT
vs.
MAXENT & AL.

*price of its valuation in the inventory, as it is decided by said deliberation.*

It is thus seen, that the case before the court is different from any yet-decided by it. The judgment here is in the constitutional language. In the cases already mentioned, which bear the closet resemblance to this, the decrees were not pronounced in English : the proceedings in French were made the judgment of the court, or when presented for approval, they would have become so if homologated. The question is therefore open on its merits, and we are at liberty to examine it, not indeed entirely uninfluenced by the cases already decided, but certainly uncontrolled by them, for though in some respects alike, they are far from being the same.

That question is, whether a judgment pronounced in English, adjudicating property, where the deliberations of the family meeting have been conducted, and recorded in French, is null and void ? I feel it to be one of considerable difficulty, and I know it to be one, in which a great, and I am convinced an honest diversity of opinion exists. This is not surprising. Men will

be found to differ on this, as on almost all
questions of general importance, where
there is the least room for it, and more
especially on those where political objects
are to be attained by legislation. Nothing
has such a tendency to warp and bias the
mind, and confuse our researches after truth
in legal questions, than the combination of
such matters, and men who think they rea-
son solely on the subject as one of law, will
insensibly to themselves, differ in their con-
clusions, from the different views they take
of its policy. Independent of this consi-
deration, they will differ too, unconscious
of the cause, from temperament : cast of
thought: habits of viewing legal questions :
and in this instance perhaps from the lan-
guage they speak. The sects which have
always divided jurisprudence, exist here as
in every other community. One class will
interpret the terms *judicial proceedings, lato
sensuo*, the other *stricta sensu*, and thus arrive
at directly opposite results, One, viewing
the object contemplated by the constitution
as of vast importance to the best interests
of a people, who forming part of a govern-
ment, do not speak its language, will pre-

.Eastern District.
·· *May*, 1830.

Maxent
*us.*
Maxent & al. fer, and naturally come to think right, that construction which in a measure compels a state of things, they consider beneficial. Another, considering the desired end, retarded, rather than advanced, by any thing which carries with it an air of *compulsion*, who believe that the object sought for, will be best attained, by trusting to time, and the influence of causes, which cannot fail of their effect unless prejudices are aroused against them, will leave to, and finally adopt that interpretation, which leaves the matter as much as possible to the will of the people, who are to gain, or to suffer by it.

Whether any of these considerations have operated in my mind is more than *I can say.* Perhaps they have. But *if* they have, it is unconsciously, for my aim has been, in common I am sure with the other members of the court, to seek for the *true intent and* meaning of the framers of the constitution.

Perhaps it would be correct to say, that nothing can be considered judicial proceedings, but writs, citations. pleadings, interlocutory orders, judgments, and executions. But definitions are dangerous, and it is better and

safer to say what is not, than what is a judi-
cial proceeding.   It is material in my view
of the case, to examine whether the evidence
given in a cause can be considered such, and
I do not think it can.   It is not a proceeding
*of* justice, but that *on* which judgment is
formed and pronounced, and when it consists
of written documents, it exists independent
of, and previous to the suit in court.   It could
not have been the contemplation of congress
when they proposed this condition, and *I am
sure* it was not understood by our convention
when they accepted it; that the people of
this state were to cease at once using their
own language for all written contracts, on
pain of their being null and void.   Such an
idea cannot be harbored for a moment.   If
then the evidence need not be in the English
language, is there any necessity for translat-
ing it into that language before it can be used;
and is the judgment null and void where it
does not appear on record, that this formality
was pursued ?   I think not, because the evi-
dence is not a judicial proceeding, but the
matter on which proceedings are had.

On this branch of the question I have no
doubt; but I have serious doubts, whether

the deliberations of a family meeting can be considered as mere evidence in the cause. The act under which the adjudication took place, is in these words : " When the legitimate father or mother of a minor, has an estate in common with said minor, said father, or mother may cause either the whole, or part of said estate to be adjudicated to him or her by the judge, according to the estimated value of the inventory, provided this estimation has been made by appraisers duly sworn, and provided likewise said adjudication be decreed convenient to the interest of the minor by the assembly of the family, and provided moreover the same has been assented to by the under tutor," *Mart. Dig.* 127, 128, *no.* 3.

By this enactment it appears, that the sentence of adjudication is pronounced on three things: the estimation being sworn to ; the assent of the under tutor; and the advice of family meeting. And hence it may be said, that all, and each of these things, are the evidence on which the judge acts, when he decrees that the property shall be adjudicated. As however the family meeting give their advice and opinion to the judge, which advice

and opinion must be formed on all the cir-

cumstances that could render such a mea-
sure proper; there is considerable force in
the position that they are by law made assist-
ants to the judge in pronouncing his decree,
and that their deliberations form a part of the
judicial proceeding.  In opposition to this it
may be said, that their functions cannot be
distinguished from that of witnesses skilled
in a particular art, or profession, who give
their opinion to the court on other evidence,
and on which opinion the court acts in pro-
nouncing judgment.  On the other hand, the
deliberation of the family meeting, and the
conclusion to which it arrives, bear a consi-
derable analogy to the deliberations of a jury
who hear the evidence, and give a verdict,
on which the judge pronounces judgment.
But the weight due to this last consideration
is greatly diminished, by reflecting that juries
are made by law a tribunal for the trial of
facts; that when called on for that purpose,
they take the place of the judge; that the trial
is in open court; that in criminal matters the
verdict is conclusive in favor of the prisoner;
that when they decide the judge does not
weigh the testimony.  While in the case of

Eastern District.
*May*, 1830.

MAXENT
*vs.*
MAXENT. & AL.

an adjudication of minors' property, he comes to his conclusions not on the advice of the family meeting alone ; but on that and other evidence, viz. the inventory and appraisement being sworn to, and the consent of the under tutor. That there is no more reason for not considering the deliberations of the family meeting evidence, than there would be to declare, that the assent of the under tutor, and the proof of the appraisement being sworn to, was not.

It cannot escape the attention of any one who reflects on this subject, that if the deliberations of a family meeting is considered a judicial proceeding, a most embarrassing consideration would arise in relation to another matter of daily occurrence in this state. We have the executory proceeding, by which an order of seizure and sale, may at once issue on a mortgage by authentic act, executed before a notary. Our law regards this as equivalent to a confession of judgment. We have decided that a judge in giving an order on it, acts judicially. 12 *Mart.* 691. If the family meeting be a judicial proceeding, it will be hard to draw the line between it and the act before the notary. Now though a case has

been brought before the court, where this question was mooted, I do not believe that it was ever seriously doubted, that acts before notaries in the French language, had not the same force and effect as if they were written in English; the belief has been almost universal, that they were nothing more than evidence, on which the court might pronounce judgment, and order execution.

I have thus thrown together the different reasons which have occurred to me in the examination of this question, why the advice of a family meeting should and should not be considered a judicial proceeding. If the subject was presented to me without the aid furnished by the opinion which the other branches of the government have expressed on it, I should have strong doubts, though the leaning of my opinion is, that it partakes more of the character of evidence, than any thing else. But the act of the legislature cannot be excluded from consideration, and the constitution has to be interpreted not by itself alone, but with the statute passed in relation to it.

In the year 1822 the legislature of this state passed an act, by which they in substance

declared, that the deliberations of a family meeting were not judicial proceedings: because in the act it is provided, that the process verbal of a family meeting shall be as legal and binding on the parties, as if made and executed in the language in which the constitution of the United States is written.

That this act cannot control the case now under consideration unless it be constitutional, is a truth which requires no reasoning to enforce, and I trust the day is distant when it will be necessary to prove it. But though a law of the legislature can never make that constitutional which is not so in truth, it must exercise a powerful influence in deciding whether it be constitutional or not. The opinion of the legislative and executive branches of the government, sworn like the judiciary, to maintain the constitution, acting under every obligation which duty and conscience can impose, is certainly a strong, though not a conclusive reason to induce others where the case is not clear, to adopt their construction as correct. It has all the weight which authority, independent of reason, can have in any case. And if the subject be one on which doubt exists, it is the duty of the other

branches of the government to adopt the con-
struction: the peace of society emphatically
requires it.

I have looked, I believe, into all the cases
which are reported to have come before the
courts of the different states of the Union, and
those of the United States in regard to the
constitutionality of laws, and I find the prin-
ciple just alluded to, has universally been ad-
mitted, and uniformly acted on. It is unne-
cessary to cite all these cases, or quote the
language of the distinguished men who have
been governed by this consideration. So early
as the year 1798, judge Chase said, I never
will decide any law to be void *but in a very
clear case;* and the present chief justice of
the United States, in delivering the opinion in
the case of *Dartmouth College* vs. *Wood-
ward,* observed: "On more than one occa-
sion this court has expressed the cautious
circumspection with which it approaches the
consideration of such questions; and has de-
clared, that, in no doubtful case, would it pro-
nounce a legislative act to be contrary to the
constitution." From every thing I can disco-
ver, I believe this principle to be as firmly es-
tablished, as the right of the judiciary to pro-

nounce a law unconstitutional. 3 *Dallas*, 395; 4 *Wheaton*, 624.

I am doubtful in this instance, whether the law under consideration be unconstitutional, and I cannot pronounce it so. If the doctrine just stated be true, there never was an act of a legislature to which it can be more cheerfully applied. The statute interferes not with mens' contracts: it destroys no vested rights: it impairs not the protection due to property: nor violates personal security. It is in furtherance of justice: to quiet men in their estates: to protect the citizen in the possession of that which he has honestly acquired; and to prevent it being wrested from them on technical objections.

And this brings me to a consideration of great importance, and which I acknowledge has as much weight on my mind as the act of the legislature. It is now 18 years since the constitution was formed. During all this time it has been universally believed that meetings of families might be conducted in the language of the persons called to deliberate on the affairs of minors. I believe it is not an exaggeration to say, that every twenty-five years, nearly all the property of the state pas-

ses through the court of probates. A large

portion of it has been settled by proceedings similar to those now before us, and a decision pronouncing them void would produce the most disastrous effects on the best interests of society. Litigation to a frightful extent, could not fail to follow a declaration on our part, that they were void. Litigation too in its most odious features, where the endearing ties of blood and friendship, would be sacrificed to cupidity: where brothers and sisters would be seen arrayed against each other, and children against their parents. No one can contemplate such consequences without pain, and nothing short of an absolute conviction on my mind, of the proceedings of the family meeting being clearly a violation of the constitution, could induce me to scatter the seeds of discord through the state and sow them in the bosom of families. The case before is a sample of what would follow. We have here presented the disgusting spectacle of children, for the sake of a little property, accusing their mother of misconduct, and dragging before a court of justice, the being to whom they are indebted for life.

Eastern District.
*May*, 1830.

MAXENT
*vs.*
MAXENT & AL.

The importance of all constitutional questions is my reason for going so much at length into this. In concluding, I wish to state, that ifthe law was clearly unconstitutional,I do not think the continuance of the error for any length of time could render it valid. It appears to me that the implied assent of the other branches of the government which sanctions mistakes in relation to laws, cannot have any effect in constitutional questions, for they have no power to dispense with the fundamental lawof the state. But it is unnecessary to enter fully into this subject.

My opinion is that the judgment of the court of probates be affirmed.

MARTIN, J. The defendants are appellants from a decree, approving the process verbal of the deliberations of the family meeting, and adjudicating to the plaintiff the property therein mentioned, common to her and the defendants her children.

Their counsel has assigned as errors apparent on the face of the record, that

1. The proceedings of the family meeting by virtue of which the whole estate was de-

creed to be adjudicated to the appellee, at the price of the appraisement, are null and void: the same not being written in English.

2. That the proceedings (being a public act) ought to have been attested by two witnesses.

The case has been submitted to us, without any argument.

I. By a provision of the constitution, " all judicial proceedings are to be conducted and preserved, in the language in which the constitution of the United States is written. *Section 15. art. 6.*

I remember but five decisions of this tribunal which cast any light on the question we are now called on to solve.

There is however, one of the superior court, before the organization of the judiciary of the state, according to the constitution. It is that in Macarty's case, 2 *Martin*, 278 ; it was there held, that a mittimus, written in the French language was null and void.

This court was first called upon to act on the question in the case of *Dussuau's syndics* vs. *Prideaux*, 4 id. 451 ; we then decided that a creditor, who had not opposed the homologation of the process verbal of the

deliberations of the meeting of the creditors before the notary, could not avail himself of the circumstance of the document, being written in the French language. We then said that we inclined to think that the proceedings of creditors, convened by a court of justice, are a part of these proceedings, the whole of which forms what is known to the Spanish law, as the *juicio de concurso;* as the constitution requires that all judicial proceedings should be conducted and preserved in the language in which the constitution of the United States is written, we are disposed to believe, that if the objection had come from a party who had not concurred in, or adhered to the proceedings complained of, it would be our duty to declare they are not legal.

The next case was that of *Tregre* vs.*Tregre,* 6 id. 638. We then held that the proceedings of a judge of probates, proceeding as such, to the partition of an estate, and decreeing the adjudication of it, were stamped with the character of judicial proceedings, and it was our duty to declare that, unless they were written in the English language, as the constitution requires, they were void.

The third was the case of *Durnford* vs. *Segher's syndics*, 7 id. 499, which was an appeal from a judgment of the court of the first district, setting aside the proceedings of the meeting of the creditors, because they were written in French. In affirming the judgment we said, the proceedings set aside are judicial proceedings ; they are ordered by the court, and constitute a part of the proceedings, instituted by the debtor against his creditors, and are the basis of the judgment which terminates them. They are therefore some of the proceedings, which the constitution requires to be conducted and preserved in the language in which the constitution of the United States is written.

The fourth is the case of *Dittman* vs. *Hotz*, in which we expressed our clear opinion, that whenever one of the parties, who have submitted their case to arbitrators, applies to a court of justice to have their judgment to make the award valid, which the party presents for homologation, it must be written in the language which the constitution requires ; otherwise it would not judicially appear on the records of the court, by virtue of what sentence or judgment execution was awarded.

Eastern District.
*May*, 1830.

MAXENT
*vs.*
MAXENT & AL.

Lastly, is the case of *Viales' syndics* vs. *Gardner*, id. 324. This was an appeal from the judgment of the court of the first district, refusing to acknowledge the plaintiffs' capacity as syndics, because the process verbal of the deliberations of the creditors before the notary, were written in the French language. The proceedings had indeed been homologated, but no part of them was recited, nor was any mention made of the plaintiffs' appointment as syndics, in the judgment of homologation. We said " to homologate is *omos logos, similiter dicere,* or to say the like. The case cannot be put on a footing more favourable to the plaintiffs, than by considering it, as if the whole proceedings before the notary had been *verbatim* and *literatim* transcribed in the judgment. Had this been the case, we would be bound to consider the part of the judgment written in the French language as a *nullity :* and if what is on this record, written in the French language be disregarded, nothing shows that the plaintiffs were appointed syndics. The judgment of the district court was affirmed.

According to these decisions, it appears that the process verbal of the deliberations

of the meeting of an insolvent's creditors, and an award of arbitrators were considered by the judiciary power of the state as judicial proceedings ; and consequently were of no validity, unless conducted and preserved in the language in which the constitution of the United States is written. Whether the process verbal of the deliberations of a family meeting were to be considered in the same light, was a question which does not appear to have been brought.

The legislature was now pleased to enact that no process verbal of any family meeting, no written instrument containing the deliberations of any meeting of creditors, no decision or award of arbitrators, that may have taken place previous to the date hereof, or may take place hereafter, shall in any way whatever be attacked or invalidated, on the ground that it may have been made, executed, or drawn up in the French language ; but on the contrary, any process verbal of the deliberations of a family meeting, any act containing the deliberations of meetings of creditors, any decision or award of arbitrators, which may be made or executed in the French language, shall be quite as legal and binding upon the

parties, as if the same had been made or executed in the English language. *Act of March* 16, 1822.

It has appeared to me that the present case may be disposed of, without inquiring into the force and effect of this act of the legislature. Allowing to the appellee every benefit he may attempt to draw from it, the decision of the court in the case of *Tregre* vs. *Tregre* is unshaken. The proceedings of a judge of probates decreeing the adjudication of an estate, are stamped with the character of judicial proceedings, and it is our duty to declare that unless they be written in the English language, as the constitution requires, they are void.

Neither is our decision in the case of *Viales' Syndics* touched, and the present case, according to it, "cannot be put on a footing more favourable to the plaintiffs than by considering it as if the whole proceedings, of the family meeting had been *verbatim* and *literatim* transcribed in the judgment. Had this been the case, we would be bound to consider that part of the judgment as a nullity : and if what is written in the French language on the record be disregarded,

nothing shows what land is adjudicated. The
decree is in the following words : " Let the
deliberations of the minors Maxents' family,
hereto annexed, be approved and registered,
and let the property within mentioned be
adjudicated to the petitioner, at the price of
the valuation in the inventory, as is described
by said deliberations." Now, if in the case
of *Viales' syndics*, (whose appointment
resulted from the homologation or approba-
tion of the deliberations of the creditors, writ-
ten in the French language,) could not esta-
blish their capacity, because the document
referred to in the judgment of homologation,
being in the French language, had not the
character of *judicial* proceedings ; how
can the appellee establish what land was ad-
judicated to her, and what are the directions
of the deliberations of the family, while these
lands and directions are not stated in the
judgment, nor in any part of the *judicial* pro-
ceedings of the case ?

It appears that the judgment is erroneous,
because it does not show what land is ad-
judicated, nor what are the directions of the
deliberations of the family meeting. This
omission, indeed, would be cured, if this

Eastern District.
*May*, 1830.

MAXENT
*vs.*
MAXENT & AL.

appeared by any part of the judicial proceedings. As we held in the case of *Witmans' heirs* vs. *Duhamel*, a judgment must be certain, but if it does not appear so on its face, it suffices if it appear to be so by a reference to the judicial proceedings in the case. If that certainly appeared only from a recurrence to the evidence, I think the judgment would be incomplete; for the evidence is not always conclusive, and it is a judicial process to extract the evidence from a mass of testimomy and instruments of writing; if a reference in any case be to a particular piece of evidence, I think it should necessarily be to a piece of evidence, written in the language in which judicial proceedings are to be conducted and preserved.

The other members have formed an opinion, which is about to become that of the tribunal: it is my duty, as I do not perfectly assent to it, to state my view of the case.

The family meeting, in a case like the present, is the assembly of the minors' kindred, to whom the law requires a judge of probates to refer the main question of fact:

*i. e.* whether it comports with his interests, that his part of the property common to him and the surviving parent be adjudicated to the latter, at the price of the appraisement. This finding is the *basis* of the decree, which puts an end to the action or suit instituted or commenced by the parent's petition to have a family meeting called; the order of the judge therefor, the citation to the members of the meeting; the process verbal of their deliberations; the citation to the under-tutor, if he does not appear at the meeting; the petition to have the adjudication made according to the deliberations; and the judge's final order appear to me essential *judicial* proceedings.

In case of insolvency, the debtor institutes or commences an action against all his creditors, in order to obtain a respite or their acceptance of the cession of his property and his discharge from liability to imprisonment. His petition, the order of the judge thereon; the citation of the creditors to the meeting; the process verbal of the deliberations of the creditors, &c. appear to me judicial proceedings, terminating by the final judgment.

The process verbal of the deliberations of the creditors is the basis of the consequent decree, and is part of the judicial proceedings which precede it.

Such have been my impressions, when I joined my colleagues, in the judgments I have cited. I confess they were unchanged when the act of 1822 was promulgated. It is now my duty to see whether it presents to courts of justice a legitimate rule of action.

Its object appears to have been the gratuitous one of explaining the fifteenth article of the sixth section of the constitution, to remove from its influence certain documents, which repeated judgments of the inferior courts, affirmed by this tribunal, had declared within it. The act was expressly declared to have a retroactive effect. It appears to me the gratuitous exposition, interpretative and constructive explanation of the constitution are not legitimate objects of legislation.

The exposition, explanation, or construction, given to any part of the constitution, on which they are legitimately called upon to act, will command the respect of citizens and magistrates, as the opinion of the first

branch of government, drawn forth in the

exercise of its legitimate functions, *e. g.* in a late contest the decision of the senate and house of representatives, as to the president of the senate, appointed last January, must command the respect of the judiciary, because the houses were by certain circumstances called upon to determine whether, on the death of a governor, his functions, till another was elected, devolved on the president of the senate *for the time being ;* or solely on the president of the senate, at the period of the governor's death. The constitution imposing on the houses the duty of acting on the question, when it arose, vested them with the power of determining it.

The opinion of the supreme court of the United States, expressed in the legitimate exercise of its functions, the pronouncing judgments between suitors, affords a legitimate construction of the constitution and laws of the United States, which will command respect and obedience from every tribunal in the nation ; but if its opinion was given not as a judgment, but as the former parliaments of France used to do, *par*

Eastern District.
May, 1830.

MAXENT
vs.
MAXENT & AL.

*voie de réglement,* it would have no binding authority.

I conclude that I cannot change the opinion I have formed or expressed in assenting to the decisions I have cited, merely because it has pleased the legislature to express a contrary opinion.

But although the act of the legislature, *per se,* does not seem to me to have any force, yet I must reflect that their view has been that of a great majority of the judges of probates in this state, ever since the operation of the state government; and since the promulgation of the act, many judges have believed it afforded them a legitimate rule of action.

The members of family meetings, being the relations of minors, are generally of the ancient population of the country; few of whom understood any language but the French; they would have refused their signatures to a document couched in a language unknown to them. The practice of drawing process verbal of their deliberations generally during the ten years, which preceded the act of the legislature, has become almost universal during the eight

·years that followed it. A vast number of
estates have been settled and adjudicated
in this way. 'Property to an immense
amount has had innumerable mutations.
The state must be thrown into the utmost
confusion and disorder, by our considering
the process verbal of the deliberations of
family meetings, as within the influence of
the fifteenth section of the sixth article of
the constitution.

And we must adopt the course we pursued
in 1815, when we were pressed to declare,
that the office of special administrator which
had been in operation for eleven years, had
no legal existence, in the case of *Rogers* vs.
*Buller*, 3 id. 665. We then said, " Till the
institution of the present suit, during the whole
territorial government, no doubt appears to
have ever existed of the constitutional and
legal existence of the office: many estates,
since, of great value, have been settled by the
special administrator. It would be attended
with monstrous inconveniencies, if by de-
claring now that the office never legally
existed, the court was to annul all the trans-
actions of the various incumbents, who have
filled it." We then referred to a similar de-

cision of the supreme court of the United States, in *Stuart* vs. *Laird*, 1 *Cranch*, 309.

II. The family meeting was held before a justice of the peace, and his return like that of a *dedimus potestatem*, did not require the subscription of any witness.

Under these impressions I deem it my duty to conclude, that we ought not to admit the objection, that the process verbal of the family meeting was written in the French language.

But on the ground I first took, I think the judgment of the court of probates should be reversed, and the judgment made certain, by stating in the judgment, what land is adjudicated, and under what directions, if any.

MATHEWS, J. This case offers but one question for solution. It is however of great importance as involving a constitutional interpretation, which will have a serious effect on many titles to property obtained under the administration and disposal of numerous successions.

The views which I have taken of the subject, brings me to the same conclusion to which the other members of the court have arrived ; *i. e.* that the proceedings of family

meetings are not required to be in the Eng-
lish language.   Whether in coming to this
result, I shall adopt the course of reasoning of
either of them,  or express myself contented
with both or either, is not a matter of impor-
tance to the public ;  as by this decision the
question is to be finally settled, and in such a
manner as to relieve the anxiety, and quiet
the fears of many of our fellow citizens, who
hold  property under titles sanctioned  by the
proceedings of family meetings in French.
I a    however of opinion, that the proceedings
of a family meeting (which  generally takes
place out of  the  presence of the judge, who
convokes it,) are not strictly speaking judicial
proceedings.   I consider them rather as a
mode pointed out by law, in pursuance of
which a court of probates is to obtain testi-
mony as to the propriety of adjudications to
a surviving father  or mother, the property of
minors held  in common with such saving
hand.    It is perhaps a mean by which some-
thing is substituted for the consent of the co-
proprietors, who are of an  age which inca-
pacitates them to give any themselves ;  con-
sidered in other points of view, the delibera-
tions of a family assembly, are not direct

*Eastern District.
May, 1830.*

**MAXENT**
*vs.*
**MAXENT & AL.**

judicial proceedings. They are not a petition, an answer, or a judgment. They perhaps are more analogous to an answer than any thing else in immediate judicial proceedings, but certainly cannot be considered as such. The purpose of an answer is, either to deny or admit the allegations of a petition. In the case of an application made by a surviving father or mother, to have property adjudicated to him or her, which is common between the applicant and minor children; the law makes a denial by presuming that such adjudication would not benefit the minors; and their relations or friends are called on to prove that it would be advantageous, and on this proof the judge orders and decrees. The question is by no means free from doubt, when we consider that the determination of the family meeting is absolutely essential to the adjudication. If the intention of the convention be not clearly expressed by the words of the constitution, if it is to be ascertained by interpretation, I suppose the consideration of public convenience may be legally taken into view, in endeavouring to discover their intention and meaning. The inconvenience to a very large portion of the

population of the state, by requiring the proceeding of family meetings to be in English, can not be denied by any one ; nor is it easy to perceive any general benefits which could result from such a requisition. But the words taken in their most extensive signification do not in my opinion include the mere deliberations of the friends of minors, whose property is about to be adjudicated. They make no integral part of the decree of adjudication, although they form the basis on which it is made, like evidence in any other species of suits. They are not necessarily homologated by the decree in such a manner as to become a part of the judgment. In themselves they adjudge nothing ; in this respect they differ from the proceedings of creditors in a *concurso*, whose appointment of syndics is identified with the order of homologation.

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be affirmed with costs.