Martin, J.
During the term of this court, in December last, the Judge of the Criminal Court, on a rule against him to show cause why a mandamus should not be issued commanding him to grant an appeal to the defendant in this case, showed for cause:
1st. That this court is without jurisdiction in criminal cases.
2d. That the defendant was indicted, arraigned, tried, and received sentence for the violation of a public law of this State.
3d. That the present suit is neither a civil one, nor one in which the constitution and laws authorize an appeal to the Supreme Court.
The rule was made absolute; but right was reserved to the Attorney General to move for the dismissal of the appeal after the record should be filed, on the ground of absence of jurisdiction in this court.
The record having been received, the counsel for the defendant assigned the following errors as apparent on its face:
1st. The proceeding by indictment in the present case, is contrary to law; the appropriate remedy being an action of debt, *262 or an information in debt on the statute, or any other ordinary civil proceeding for the recovery of money.
2d. The judgment or sentence pronounced by the court, a qua> is illegal and erroneous, inasmuch as it condemned the defendant to stand committed until the judgment should be satisfied. 6 Johns. Rep. 507.
3d. That it condemns him to pay costs, without saying or ascertaining what costs. 1 Cowper, 60.
4th Inasmuch as it purports to be a proceeding in rem, and condemns the property of the defendant to forfeiture and confiscation, as if the same had been prosecuted or informed against: whereas, the whole proceeding was on the criminal side of the court by indictment, and against the person of the defendant only, and the only issue made or tried was on the plea of not guilty to the indictment.
5th. It appears from the whole record of the proceedings, that the same have been a mixture of criminal and civil matter, inconsistent, repugnant, and contrary to law.
The Attorney General has availed himself of the right reserved to him at the time the mandamus was ordered, to move for' the dismissal of the appeal, on the ground of absence of jurisdiction in this court.
The view which I have taken of this case, has restricted my attention to the question of jurisdiction, and to the first assignment of error, both of which I have considered together. The indictment is grounded on the first section of an act of the Legislature passed in the year 1817, which forbids the importation into this State, of any slave “ who shall have been convicted of the crimes of murder, rape, arson, manslaughter, attempt to murder, burglary, or having raised, or attempted to raise an insurrection among the slaves in any State of the Union or elsewhere; and if such should be, they shall, on conviction thereof, he seized and sold for cash to the highest bidder, after fifteen days notice of time and place of sale, one-half of the purchase money to be applied to the use of the State, and the other half to the informer; and every person who shall import or bring into this State such slaves, knowing that they have been convicted of any of the above mentioned crimes, shall, upon conviction before any court of compe *263 tent jurisdiction, be fined for each and every such slave in the sum of five hundred dollars, one-half to be applied to the use of the State, and the other half to the use of the informer.”
The right of suitors to resort to this tribunal for relief against the errors of inferior ones, is one of those thought by the people of so great value, that they have not considered the sanctuary of the law as a repository sufficiently safe for it, but have locked it up in the tabernacle of the constitution.
Although more than thirty years have elapsed since the formation of our constitution, doubts are still entertained by many sensible and well meaning persons, whether this tribunal may sustain appeals in a case like the present. The second section of the fourth article of that instrument declares, that “ the Supreme Court shall have appellate jurisdiction only, which jurisdiction shall extend to all civil cases, when the matter in dispute shall exceed the sum of three hundred dollars.” This section contains a double proposition; the first is extremely plain, and one would hardly think that a doubt could arise thereon. The jurisdiction is declared to be appellate only; original jurisdiction is clearly excluded. The second proposition is certainly susceptible of two meanings. Its object is confined to the civil jurisdiction of the court, and the intention of the framers of the constitution was doubtless to insure to suitors a resort to this court in all civil cases, when the matter in dispute exceeds three hundred dollars: but it may be doubted whether it was intended to exclude appeals in civil cases of less value, or to leave to the Legislature the power of authorizing, or denying appeals in those cases, at its discretion. No mention is made in either of these propositions of appeals in criminal cases, which are included in the first, if they be not excluded by the second. It cannot, perhaps, be assumed, that the restriction of the jurisdiction of this court in civil cases, was an exclusion of its jurisdiction in criminal cases, the exercise of which was necessarily suspended, until provision therefor should be made by the Legislature, and the power of which was restricted indeed in civil matters, but not at all in criminal.
This court is a special guardian and protector of the constitutional rights of the people. Its trust is one of extreme delicacy, and is always exercised with the utmost caution. Although in *264 the solution of constitutional questions, we cannot surrender our opinions to that of any man or body of men, we have frequently, and especially in the case of Maxent v. Maxent et al. 1 La. 452, said, that although an act of the Legislature cannot make that constitutional which is not so in truth, it must have a powerful influence on our deliberations, when we are endeavoring to fix the true construction of an article of the constitution. The opinion of the legislative and executive branches of the government, sworn, like the judiciary, to maintain the constitution, acting under every obligation which duty and conscience can impose, is certainly a strong, though not a conclusive reason to induce others, where the case is not clear, to adopt their construction. It has all the weight which authority, independent of reason, can have in any case ; and if the subject be one on which doubt exists, it is the duty of the other branches of the government to adopt the construction — the peace of society emphatically requires it.
So early as 1798, Judge Chase said: I never will decide any law to be void, but in a very clear case ; and the late Chief Justice of the United States, in delivering the opinion in the case of The Dartmouth College v. Woodward, (4 Wheat. 518,) observes : “ On more than one occasion this court has expressed the cautious circumspection with which it approaches the consideration of such questions; and has declared that, in no doubtful case, would it pronounce a legislative act to be contrary to the constitution.”
We have an interpretation of the part of the constitution under consideration, by the first Legislature of the State after its admission into the Union, in the legitimate exercise of legislative functions. It is found in 1 Moreau’s Dig. p. 18, in an act for the appointment of notaries, regulating their tenure of office, and the manner in which they are to be suspended and removed therefrom, in case of misconduct; proper objects most certainly of the attention of the Legislature. This exposition is the more valuable as one almost contemporaneous with the constitution; and the presumption is very great, that many of the members of the convention who had framed that instrument, had seats in the first Legislature which sat under it. That Legislature expressed its opinion, that the Supreme Court had jurisdiction of offences com *265 mitted by notaries in the exercise of their office. Had they not attempted to give original jurisdiction to this court, but directed the suspension of the notaries to be pronounced by any other tribunal, and given us appellate jurisdiction only, we probably would have long, paused before declining obedience to their acts, on the ground of unconstitutionality.
We have a much later exposition of the constitution by the Legislature in regard' to the present case, in an act approved March 16, 1832, p. 98, the second section of which provides: “ That the Criminal Court of the First District shall have jurisdiction of all suits and prosecutions on penal statutes, and all suits and prosecutions instituted in behalf of the State for any violation of a public law, reserving to the parties the right of appeal to the Supreme Court, in all cases in which an appeal is allowed by law.” The opinion of the Legislature is here clearly expressed, that there are suits and prosecutions on penal statutes, and suits and prosecutions on behalf of the State for violations of public laws, in which a resort to this court by appeal is allowed by law. The counsel for the appellant contend, that the case of their client is one of those in which the Legislature, in the second section of the act of 1832, recognizes his right of appeal. Whether the suit or prosecution be considered as one on a penal statute, or one instituted by the Slate for the violation of a public law, (admitting for the sake of argument that the jurisdiction of this court is confined to civil cases,) for the act on which the suit was brought is purely penal, nothing is inflicted by it but a pecuniary penalty or fine ; no imprisonment, no punishment; nothing but a definite, fixed, pecuniary penalty. The obligation of the defendant to pay the fine imposed by the Legislature, is merely a civil one, which might be extinguished by payment; and there can be no doubt that the receipt of the Treasurer for the fine would have protected him from any state prosecution; nor that, on his neglecting to pay, the Attorney General might institute a suit for the fine on behalf of the State in the Court of the First Judicial District, or in that of the parish of Orleans, although neither of these courts be clothed with criminal jurisdiction. The act of 1832, last cited, gives to the Criminal Court of the First District a concurrent jurisdiction with the district and parish courts ; and there cannot *266 be any doubt that the Attorney General had the choice of these three courts, for the institution of a civil suit to recover the fine.
One of the counsel for the defendant has urged that, at common law, a penal action, or action to recover a penalty, is a civil suit. The usual remedy, in cases of a pecuniary penalty, is an action or information of debt. He has referred us to the following very numerous authorities : An indictment will not lie for such a penalty, unless specially allowed by statute; for it is properly recoverable as a debt, and is in no just sense a criminal, proceeding. Blackstone says, the remedy to recover a pecuniary penalty fixed by statute, is by “ action of debtand he bases his opinion on the doctrine of implied contracts. 3 Bl. Com. 160, 161, 162, marginal pages. Bacon maintains the same doctrine. Bac. Abr. title Actions qui tam, in notes. Bac. Abr. title Debt, letter A.
In Salmon’s case, for practising physic without a license, the exception that debt will not lie to recover the penalty, was overruled. 1 Lord Raymond, 680, (exception 4th.)
In Bowman’s case for keeping false weights, and trying to corrupt an officer, Eyre declared, the information for the penalty a civil proceeding. 2 Bos. & Pul. 532, in notes. In Atcheson’s case, for bribery at an election, penal actions were decided to be civil suits. 1 Cowper, 382.
The statutes of jeofails and amendments do not extend to criminal proceedings; but it has been invariably held, that penal actions are within these statutes, and may be amended. 1 Bac. Abr. title, Amendment and Jeofail, A. and C. 2 Str. 1227. 2 Dallas, 143. 1 Gallison, 23.
In cases of acquittal on criminal prosecutions, no new trial can be granted; but new trials may be granted in penal actions. 4 Bl. Com. 361, 362. 1 Durnford & East, 753.
In Malland’s case, on an indictment to recover a pecuniary penalty, no method being pointed out or prescribed in the statute, by which it should be recovered, on demurrer it was held, that an indictment would not lie, and that the proper remedy was debt, to be sued for in a court of revenue, and not by indictment. Rex v. Malland, 2 Strange, 828. This doctrine has been fully recognized by the American courts. 7 Pract. Abr. Am. Com. *267 Law Cases, 289, tit. Penal Statutes, Form of the Action, note, p. 290, citing 1 N. H. Rep. 339. The court held, that where the Legislature did not provide a specific remedy, debt would lie ; and in Adams v. Woods, 2 Cranch, 336, Chief Justice Marshall held, that “ almost every fine or forfeiture under a penal statute, might be recovered in an action of debt, as well as by information of debt.”
Judge Story says: “At common law wherever a penalty is given, and no method of recovery is prescribed by the act, an action or information of debt lies, and not an indictment.” He cites in support of this position, 2 Strange, 828, and 2 Cranch, 336. See 2 Gallison, 554. In the case of The United States v. Lyman, the same doctrine is again put forth with great clearness. 1 Mason, 498.
• In 1838, the doctrine is once more explicitly declared by Judge Story, after a full examination. He says : “ The usual remedy in cases of a pecuniary penalty, is an action, or information of debt; an indictment for such a penalty will not lie, unless specially allowed by statute, for it is properly recoverable as a debt in a court of revenue by the government, and is, in no just sense, a criminal proceeding.” 3 Summer, 120, 121.
The acts of our own Legislature recognize this doctrine. 1 Moreau’s Digest, 371, 388, 402. The act of 1805, ch. 1, § 37, provides, that all indictments shall be found or exhibited within one year after the offence shall have been committed, and that all fines shall be prosecuted for within six months from the time they are incurred; from which, I infer, that fines were not intended by the Legislature to be enforced by indictment; for-otherwise, after the prosecution for the fines was prescribed by the lapse of six months, it might be enforced by indictment, during a whole twelve month from the time the offence, by which it was incurred, was committed.
The act approved the 31st January, 1821, denounces a fine of no less than 8200, or imprisonment not exceeding six months, for the killing of certain animals; and a fine of no less than $100, and imprisonment not exceeding one month, for maiming any of them; and the act authorizes a prosecution by indictment in both cases.
*268 The Attorney General has cited 4 Bac. Abr. 498. tit: Indictment, 1 Hawk. Pleas of the Crown, 288, and a case from the State Trials, to show, that an indictment would lie in this case, on the principle that when a new offence is created by an act of Parliament, and a penalty is annexed to it by a separate clause, the prosecutor is not bound to sue for the penalty, but may proceed to indict on the prior clause for a misdemeanor. By referring to 4 Bac. Abr., it will be seen that the authority referred to by Bacon, is the case of The King v. Harris, 4 Durn. & East, 202, 206. The great point in that case was, whether the disobedience of an order of the King, made in pursuance of an act of Parliament, was an indictable offence at common law. The court decided that it was not.
To do an act prohibited by statute is a misdemeanor, and punishable as such at common law, by fine and imprisonment. A violation of a prohibitory statute is, therefore, indictable as a misdemeanor at common law. If, therefore, a statute prohibits the doing of any act in one clause, and in another and separate clause annexes a penalty, he who violates the statute may be indicted under the prohibitory clause, and punished by fine and imprisonment as for a misdemeanor at common law ; for, by the common law, every misdemeanor is so punishable. But if the penalty is sought to be recovered, it can only be recovered by an action of debt, unless otherwise provided specially by the statute ; and hence, if the penalty and the prohibition are in one and the same clause, no indictment will lie. Now we have no common law offences in Louisiana. All crimes and offences against our law are created and punishable by statute. If the Legislature merely prohibit the doing any act and annex no punishment to the doing of it, no one is punishable for violating it. We have no punishment at common law, or by common law ; consequently, we could not indict or punish a violation of a law which merely forbids, but does not prescribe any punishment for a certain act. This principle explains at once the error of the Attorney General. Having no common law, Williams cannot be indicted and punished under the mere prohibitory clause of the act of 1817, as for a misdemeanor at common law. If the penalty is sought to be recovered, it can only be by a civil *269 suit. An indictment will not lie for it. The case of the King v. Harris, in 4 Durn. & East, 202, 206, and the doctrine in 4 Bac. Abr., tit. Indictment, 498, and in the note, will fully illustrate this.
The Attorney General cited three cases from 23 and 24 Pickering’s Reports, to show that, by the common law, a penalty may be recovered by indictment, as the penalty for presuming to sell spirituous liquors without a license in Massachusetts. Rev. Stat. ch. 47, § 1. But the 26th and 27th sections of that law are in these words: “ Sect. 26. All the fines imposed in this chapter may be recovered by indictment. Sect. 27. Where any person shall be convicted under, the provisions of this chapter, and shall fail to pay the fine awarded against him, he may be imprisoned in the common jail for a term not exceeding ninety days.” So that it is only in virtue of a special provision of the statute of Massachusetts, and not by the common law, that those indictments for penalties are allowed. Now we have no such special provisions in the act of 1817, and, therefore, no indictment can lie.
The Attorney General contends that the jurisprudence of this court has established, that jurisdiction in criminal cases has been denied us by the constitution of the State., The principal case by which he has endeavored to support this proposition, is that of Laverty v. Duplessis, determined in May, 1813. 3 Mart. 42. Laverty, who claimed citizenship of the United States, under a decision of the Supreme Court, in Desbois’ case, (2 Mart. 185,) before the establishment of the State judiciary under the constitution, had been discharged upon a habeas corpus, which he had obtained from the Court of the First District against Duplessis, the Marshal of the United States, who had arrested him for the purpose of having him removed as an alien enemy, to a certain distance in the inland part of the State. The Marshal, unwilling to yield up his prisoner oil the decision of an inferior court, appealed. The correctness of the opinion of the Superior Court was questioned by many, and it was thought desirable to have the point settled in this court; but public expectation was disappointed. The court avoided looking into Desbois’ case, and dismissed the appeal, expressing its unanimous opinion, that it could not exercise any criminal jurisdiction. It is difficult- to *270 comprehend how the assertion of the court’s inability to exercise any criminal jurisdiction, led to the conclusion that the appeal ought to be dismissed. Neither in the application of Laverty for the habeas corpus, in the return of the Marshal, in the decision of the District Court, nor in the argument in this, was the least allusion made to any criminal act having been committed. The court took a vain trouble in commenting on its criminal jurisdiction. All they said thereon must be considered as obiter dicta, of no utility in the examination of the question before them, and of no authority in that case or posterior ones. In the case of Chardon v. Guimblotte, 1 La. 423, this court thought that, although Duplessis’ appeal could not be dismissed on the ground of the absence of criminal jurisdiction, it might perhaps have been sustained, and the judgment have been reversed on the score of the arrest being on a political matter, and under the authority of the United States.
We have since frequently held, that this court may entertain appeals from decisions on writs of habeas corpus in civil cases. Dodge's case, 6 Mart. 569. Martin v. Ashcraft, 8 Ib. N. S. 314. Chardon v. Guimblotte, 1 La. 421. Hyde et al. v. Jenkins, 6 La. 436. In some of those cases, we declared our want of jurisdiction on writs of habeas corpus in criminal cases. The opinion has proceeded from the consciousness, that the Legislature has made no provision for our exercise of such jurisdiction. Whether this court is susceptible of receiving such a jurisdiction from a provision made by the Legislature for its exercise, is a proposition to which the attention of this court has not yet been directed.
I conclude that, as the obligation of the defendant to pay the fine was merely a civil one, which he might have extinguished by payment, and on which, on his failure to pay, he might have been prosecuted in courts destitute of criminal jurisdiction, the concurrent jurisdiction of such a suit given to the Criminal Court of the First District, has not altered its character; that the fine exceeding the sum of $300, the State or the defendant were entitled to seek relief in this court by appeal; and that it was not in the power of the Attorney General, by indicting the defendant, instead of instituting a civil suit, to deprive him of the right of appeal. The appeal must, therefore, be sustained.
*271 ' On the merits, I think with the defendant’s counsel, that the proceeding by indictment in the present case is contrary to law ; the appropriate remedy being an action of debt, or an information in debt on the statute, or any other civil proceeding for the recovery of money. The judgment ought to be reversed.
Bullard, J.
The Attorney General has moved to dismiss this appeal, on the ground that the case is a criminal one, and that this court is without jurisdiction.
Whatever may have been my opinion originally upon the extent of jurisdiction which the constitution confers upon this court, I consider it unnecessary now to intimate. It is enough that the Legislature have never regulated the exercise of such jurisdiction in criminal cases, and that, at a very early period, this court declined to assume it. Since the decision in the case of Laverty, the question has been considered as at rest; and, for the purpose of this argument, it must be assumed that we are without jurisdiction in criminal cases. Is this case such an one ? That is the question, and that is identical with the question to which I shall confine myself, to wit: Does the statute forbidding the introduction into the State of slaves convicted of certain infamous crimes, and denouncing a fine of $500 and a forfeiture of the slave, in case of contravention, constitute a crime, offence, or misdemeanor, which the Attorney General may prosecute criminaliter, through the intervention of a grand jury? 'if the violation of that prohibitory law be an indictable offence, there is, we all agree, an end of the case ; the appeal is to be dismissed, for want of jurisdiction in this court.
I begin with a definition of a crime or misdemeanor, which will not be questioned- — -that of Blackstone. “ A crime or misdemeanor,” says that eminent author, “ is an act committed or omitted in violation of a public law, either forbidding .or commanding it. This general definition comprehends both crimes and misdemeanors, which, properly speaking, are mere synonymous terms.” “The distinction of public wrongs from private, of crimes and misdemeanors from civil injuries, seems principally to consist in this, that private wrongs, or civil injuries, are an infringement or privation of the- civil rights *272 which belong to individuals, considered merely as individuals ; public wrongs, or crimes and misdemeanors, are a breach and violation of the public rights and duties due to the whole community, considered as a community, in its social aggregate capacity.” 4 Black. Comm. 5. .
It is hardly necessary to say, that the evil which the statute in question was intended to prevent was a great public evil, and concerned the whole community. The act of knowingly introducing into the State, and mingling with our servile population slaves convicted in other States or countries of murder, rape, manslaughter, arson, burglary, &c., was prohibited as dangerous to the public safety, and is made, in my opinion, not only an of-fence against the State in general, but is one of very great enormity. It is not to be supposed that in the States from which they might be brought, they are permitted to exist at all, except in penitentiaries or other public prisons; and, therefore, when brought here, it is fair to presume they have been ransomed, and, what is more infamous, ransomed for the sake of gain. Nor would I presume that they have been permitted to be ransomed upon the condition of being transported to another slaveholding State, or indeed to any Christian and civilized community. Is there any man of unsophisticated .sense who would not exclaim at once, that it is a crime against the State to bring in knowingly and in defiance of a public law, convicted ravishers, murderers, and incendiaries ? that it is a matter of which the grand jury, sworn to inquire into all the offences committed within their respective parishes, have a right to take cognizance, and the Attorney General to prosecute by indictment ?
Will it be said that a contravention of this statute is punishable only by fine, and therefore not indictable ? 1 answer that I am yet to learn that the character of a law depends upon its sanction, and I cannot understand how the same act, prohibited by a public law, would be an indictable offence if made punishable by imprisonment at hard labor, and would not be so if punishable by fine alone.. The sanction of laws, the punishment denounced against those who violate a law forbidding particular acts, are within the discretion of the Legislature; and, if murder were made punishable by fine alone, it would not be less a crime. It *273 will be said, perhaps, that murder is not merely malum prohibitum, it is malum in se, and therefore essentially and necessarily a crime. By that I suppose is meant, that murder is contrary to the generally received opinions of mankind, and criminal independently of human laws. And is it not essentially immoral knowingly to let loose convicted felons upon a Christian community? Can that be said to be a thing harmless in itself, and merely forbidden by positive law? If digging a ditch across a public highway be indictable according to the common law, as we are taught by Blackstone, it is not easy to conceive why the only remedy for the State against a person charged with violating the statute in question, should be by an action of debt in a court of civil jurisdiction. The Supreme Court of Pennsylvania held, that maliciously, wilfully, and wickedly killing a horse, was an indictable offence. Chief Justice McKean, in pronouncing the opinion of the court, says: “ It is true, that in the examination of the cases, we have not found the line accurately drawn, but it seems agreed, that whatever amounts to a public wrong; may be made the subject of an indictment.” 1 Dallas, 338. I admit that this doctrine is one of the common law, which regards every act contra bonos mores as indictable, and that in this State no such mass of midefined offences exists ; and it is not left to the courts to say what constitutes a public offence or misdemeanor. Nothing is punishable here, which is not made an offence, and the punishment denounced by legislative authority; but my idea is, that whatever constitutes an offence against the public by act of the Legislature, may be prosecuted by indictment, unless the Legislature has expressly provided for a different mode of proceeding. Having shown that, according to the principles of the common law, the statute has created an offence against the public, it is clearly the duty of the Attorney General to prosecute in the name of the State. 1 Bul. & Our. Dig. 26.
The argument that this is essentially a civil case, although the proceeding is by indictment, is ingeniously carried out, and appears at first plausible. Certainly the Attorney General cannot change the nature of the act by the form of proceeding he may choose to adopt. But I am satisfied, that even if an individual informer could maintain an action in his name to recover the *274 penalty, the act of contravening the statute would still constitute an offence against the State, which might be prosecuted, by indictment or information.
And this brings me to examine the case of Adams v. Woods, 2 Cranch, 336, upon which the counsel for the prisoner has relied. Much stress is laid upon the expression of the Chief Justice, in delivering the opinion of the court in that case, that “ almost every fine or forfeiture under a penal statute, may be recovered by an action of debt, as well as by information.” I must remark, in relation to that case, that the statute upon which the action was brought, to wit, the act of 1794, to prohibit the carrying on the slave trade from the United States to any foreign place or country, expressly declares, that the penalty should “ go, one moiety to the United States, and the other moiety thereof to the use of him or her who shall sue for and prosecute the same” The action brought was by an informer, who demanded one-half of the penalty, and the question before the court was, whether the statute of limitations of 1790, was a bar to the action. The clause of the statute which was applicable, is as follows: “Nor shall any person be prosecuted, tried or punished for any offence not capital, nor for any fine or forfeiture under any penal statute, unless the indictment or information for the same shall be found or instituted within two years,” &c. Now, when the Chief Justice says, that every penalty imposed by such a statute may be prosecuted by action of de’bt, or information, he meant, undoubtedly, an information on the criminal side of the court — a criminal prosecution, because the statute of limitations in question referred exclusively to the prosecution of criminal proceedings. He says further : “ In this particular case the statute which creates the forfeiture, does not prescribe the mode of demanding it; consequently, either debt or information would lie. It would be singular if the one remedy should be barred, and the other left unrestrained.” The court consequently held, that the action on the statute was barred by the statute of limitations.
Let me ask whether the statute limiting criminal prosecutions in this State, would not apply to a violation of the statute now in question, in whatever form the penalty may have been sued for, and whether the Attorney General could maintain an action *275 in a civil form upon the statute, after one year. In the case just cited, it was not decided that a violation of the act of Congress prohibiting the slave trade was not an indictable offence ; on the contrary, it was held, that it was so far a criminal offence as to be barred by the general act of limitations of criminal proceedings. The very expression used in the act of Congress implies, I think, that an indictment would lie upon such a penal statute; and by information is evidently meant an information by the public prosecutor, as contradistinguished from an action of debt by an individual informer.
In the case Ex parte Marquand, 2 Gallison, 554, Judge Story recognized a technical distinction between fines and penalties. In that case fines had been imposed upon conviction under an indictment under the revenue laws for resisting a custom house officer ; and the question was, whether they should be paid over to the collector for distribution. The Judge remarks: “On looking at the language of the act of 1799, it seems difficult to resist the impression, that ‘fines? in the technical sense of the word, as well as penalties, are to be received and distributed by the collector. There are, indeed, but two cases in which, technically speaking, fines are contemplated to be imposed by the act, viz., in cases of obstructing officers of the customs, and of perjury. In all other pecuniary forfeitures within the act, the Legislature seem to have directed, not the process of indictment where a fine may be imposed, but an action or information of debt; for at common law, whenever a penalty is given, and no appropriation or method of recovering is prescribed by the act, an action or information of debt lies, and not an indictment.”
I am not in the habit of attaching much importance to the mere phraseology of judges arguendo ; but if the language of the learned Judge in the above case has any particular meaning, it must apply to the case now before the court. For under this statute a fine is denounced, and it is appropriated by the act, one-half to the informer, and the other half to the State ; but no action is given to an informer, and I should infer that his opinion would be, that an indictment would lie. I do not see how an action of debt could be maintained by the State for the whole finé, when half is given to the informer, nor how an informer *276 could maintain an action qui tam, which is not expressly given by the statute.
The consequences which might flow from looking upon the fine as a_ mere debt due to the State, to be recovered by civil action, would be very singular. Suppose a speculator, who may have emptied some State prison of its polluted inmates, should apply to the State Treasurer, and offer to pay him the debt due to the State for bringing in an assortment of felons, and the Treasurer were to require of him $500 a head, could he not insist upon retaining one-half as informer, and thereby increase the profits of his odious and detestable speculation 1 And if he were asked where the slaves are, he might reply, that is for the State to ascertain, if they wish to prosecute for a forfeiture of them. Thus they are sold at an enormous profit, and society left to feel the consequences.
The authority of Hawkins appears to me fully to sustain the Attorney General in this prosecution. He lays down the rule to be, that “ whenever a statute prohibits a matter of public grievance to the liberties and security of the subject, or commands a matter of public convenience, as the repairing of the common streets of a town, an offender against such statute is punishable, not only at the suit of the party aggrieved, but also by way of indictment for his contempt of the statute, unless such method of proceeding do manifestly appear to be excluded by it.” As it relates to new offences created by statute, he says : “ That where the statute appoints a particular manner of proceeding against the offender, as by commitment, or action of debt, or information, without mentioning an indictment, it seems to be settled at this day, that it will not maintain an indictment, because the mentioning the other methods of proceeding only, seems impliedly to exclude that of an indictment.” And in a note, the doctrine as laid down by Lord Mansfield is condensed into the following pithy sentence, which I believe to be perfectly sound in this State, viz : “ When new created offences are only prohibited by the general prohibitory clause of an act of Parliament, an indictment will lie; but when there is a prohibitory particular clause, specifying only particular remedies, then such particular remedies must be pursued.” I do not mean to say that an indictment *277 would lie on a mere prohibition, without denouncing any penalty, or fine, or other punishment; but that whatever may be the sanction of the statute of a public nature, its violation may be prosecuted by indictment. This is more especially the case where no action is given to an informer, and no particular form of proceeding is prescribed.
Much has been said upon what fell from Lord Mansfied in the case of Atcheson v. Everitt, in 1 Cowper, 12. That was an action of debt upon the statute of George II, against bribery, and the question was, whether a Quaker could testify, or in other words, whether the action was criminal or civil ; for if civil, the affirmation of a Quaker could be received, if criminal it could not. The action was by an individual as informer, claiming the whole penalty under the statute. It was stated in argument that the great question was, whether that was a criminal cause ; and that the criterion of distinction was the form of the proceeding, not the offence which occasioned it; and, that the offence of bribery in common with many others, might be prosecuted either by action or indictment. This position was not controverted, and consequently the decision throws no light upon this case. If the Attorney General had proceeded in that case by indictment, and the Court of King’s Bench had said that an indictment would not lie, it would have much weight. But Lord Mansfield said it is as much a civil action, as an action for money had and received. The Legislature when they excepted the evidence of Quakers in criminal cases, must be understood to mean cases technically criminal. It appears to me clear, that this case only shows the liberal construction given in England to the statute allowing the testimony of Quakers on simple affirmalion. It is far from deciding that bribery is not a .crime, or that it could not be prosecuted by indictment; and I think it particularly unfortunate in the present case, because this statute does not expressly give an action to an individual prosecutor, as the statute against bribery does.
But the act of 1832, granting certain powers to the Criminal Court of the First District, is relied on. The second section of that act declares, that that court shall have “jurisdiction of all suits and prosecutions on penal statutes, and all suits and prosecutions *278 instituted on behalf of the State for any violation of a public law, reserving to the parties the right of appeal to the Supreme Court in all cases in which an appeal is allowed by law.”
This statute undoubtedly confers civil jurisdiction on the Criminal Court of the First District, in a certain class of cases, to wit, upon bonds and recognizances, and actions upon fenal statutes.
The cases are innumerable to which this statute is applicable. It embraces actions upou penal statutes, generally. The inspection laws, the statutes relating to steamboats, to the carrying away of slaves, &c., are full of penal clauses, upon which, actions might be maintained under the act of 1832, in the Criminal Court. I am willing even to admit, that the Attorney General may have sued for the fine, under the statute to. prohibit the introduction of convicted felons, precisely as a civil action will lie in England in cases of bribery ; but it does not follow that he may not, if he thinks proper, proceed by indictment ; and that the violation of the statute is not a crime against the State, which the grand jury may bring to the notice of the court by presentment,
It has been further urged that, as it relates to the forfeiture of the slaves, the proceeding contemplated by the statute is clearly civil, it being in rem ; and that, to that extent, the prosecution of Williams is essentially civil, and that the appeal ought to be sustained. To this 1 reply, that the proceeding was by indictment, and was, therefore, a criminal proceeding ; and if the court did not pronounce a proper sentence, we can afford no relief. Admitting that, so far as Williams is concerned, the court could only condemn him to pay a fine, and had no authority to pronounce the forfeiture of the slaves, his remedy is not by appeal to this court. If the Judge exceeded his powers, the slaves are still the property of Williams, and he may make good his title. But the whole proceeding was by indictment, and the error in the sentence, if there be one, will not give us jurisdiction to correct it. We cannot have a part of it before us, and not the whole.
Upon the whole, I conclude, that the statute creates an indictable offence; that the Attorney General might well proceed in *279 that form of prosecution ; that we are without jurisdiction ; and that the appeal ought to be dismissed.
Morphy, Simon and Garland, Judges, concurred with Martin, J.